IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

KRISTI LEANNE SCURLOCK     )
                                   )
v.                               )     No. 2:17-0054
                                   )
SOCIAL SECURITY             )
ADMINISTRATION          )

To:    The Honorable Waverly D. Crenshaw, Chief District Judge


# R E P O R T   A N D   R E C O M M E N D A T I O N

Pending before the Court is Plaintiff's amended motion for judgment on the administrative record. *See* Docket Entry ("DE") 15.[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner"). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was "not disabled," and therefore not entitled to Disability Insurance Benefits ("DIB"). (*See* Administrative Transcript (DE 10) at 16-18.[2] This matter has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b), for initial consideration and a report and recommendation. *See* DE 6.

Upon review of the administrative record and consideration of the parties' filings, I recommend that Plaintiff's motion for judgment on the administrative record (DE 15) **GRANTED**, the decision of the Commissioner be **REVERSED**, and this matter be

---

[1] Plaintiff filed the amended motion for judgment on the record and accompanying brief after she was granted an extension of time to file her motion. *See* DE 14, 15. Defendant has not expressed any opposition to this filing. Plaintiff's original motion for judgment on the record (DE 13) is therefore TERMINATED as MOOT.

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "Tr." followed by the corresponding page number(s) as denoted by the large black print on the bottom right corner of each page.

**REMANDED** for further administrative proceedings consistent with this Report and Recommendation.

## I.        FACTS AND PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on October 24, 2013 due to depression, anxiety, heart disease, ventricular fibrillation, and high blood pressure, with an alleged disability onset date of August 12, 2008. (Tr. 88, 117).[3] Her application was denied initially and on reconsideration. (Tr. 88, 108). Pursuant to her request for a hearing before an ALJ, Plaintiff appeared with counsel and testified at a hearing before ALJ Donna Lefebvre on April 5, 2016. (Tr. 36). On July 18, 2016, the ALJ denied the claim. (Tr. 16-18). On July 19, 2017, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision; therefore, the ALJ's decision stands as the final determination of the Commissioner. (Tr. 1-3).

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since May 13, 2012, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: ischemic heart disease, peripheral vascular disease, depression, and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. The claimant has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b), except that she can frequently climb ramps or stairs, and occasionally climb ladders or scaffolds; she can frequently balance, stoop, kneel, crouch, or crawl; she can perform jobs that do not require more than occasional exposure to extreme heat or cold; she can perform simple and low-level detailed SVP 3 to 4 routine tasks in jobs with infrequent, routine changes in

---

[3] Plaintiff later amended the alleged onset date to May 13, 2012. (Tr. 19).

work duties; she can perform jobs requiring no direct public interaction in the course of job duties and can sustain occasional brief interaction with coworkers.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on May 7, 1971, and she was 41 years old, which is defined as a younger individual aged 18-49, on the amended alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and she is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 13, 2012, the amended alleged onset date, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 21-30).

On appeal, Plaintiff submits that the ALJ erred in "assessing the opinion evidence" of record, which resulted in a faulty analysis of whether her condition meets one of the listed impairments, as well as an RFC that lacks the support of substantial evidence. DE 15-1 at 16.

## II.    ANALYSIS

### A.  Standard of Review

On appeal, the Court is charged with determining whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d

842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). As explained by the Sixth Circuit:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner employs a five-step sequential evaluation process in considering whether a claimant is disabled. 20 C.F.R. § 416.920(a). If the issue of disability can be resolved at any point in the evaluation process, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. § 416.920(a)(4). At step one, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step four, the ALJ considers the claimant's RFC and determines whether the claimant can still perform past relevant work; and at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id*. §§ 416.920(a)(4)(i)-(v).

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is deemed "not disabled" and the ALJ need not complete the remaining steps of the

sequential analysis. *Id.* § 416.920(a). "Past relevant work" is defined as work that claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 416.960(b); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). If the claimant is incapable of performing past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. In determining a claimant's RFC, the ALJ is required to consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B.  The Commissioner's Decision

The ALJ in the instant case resolved Plaintiff's claim at step five of the five-step process. Although Plaintiff was found to have met the first two steps, the ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and was therefore not presumptively disabled. At step four, the ALJ found that Plaintiff was

unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform a work at a light level of physical exertion with express limitations to account for her severe impairments, and that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform despite such limitations. (Tr. 21-30).

### C. Assertions of Error

### 1. The opinion evidence.[4]

Plaintiff first argues that the ALJ improperly rejected the opinion of Dr. Don Elazar, a treating psychiatrist who provided a medical source statement ("MSS") on January 10, 2015. (Tr. 644-46). The MSS posits that Plaintiff suffers from "marked" limitations in numerous areas of functioning, including understanding and memory, concentration and persistence, social interaction, and adaptation. (Tr. 645-66).[5] The ALJ provided the following reasons for according "little weight" to the MSS:

> [T]his opinion ... was inconsistent with the overall medical evidence. The record indicated that Dr. [Elazar] saw the claimant for only a few months in 2014, and that she appeared calm and cooperative, with normal thought processes, despite her subjective complaints. The overall psychiatric treatment record indicated that the claimant experienced some anxiety and decreased sociability, but that she was actively involved with her family and that she regularly engaged in activities such as shopping and dining out. In addition, she was accepted to college and received at least one job offer.

(Tr. 27).

---

[4] Plaintiff's brief includes one assertion of error, that the ALJ "erred in assessing the opinion evidence," with two sub-arguments regarding the ALJ's consideration of Listings 12.04 and 12.06 and the RFC formulation. DE 15-1 at 22-23. Because I conclude that the ALJ's analysis of the opinion evidence constitutes reversible error, I do not address these sub-arguments in the instant Report & Recommendation.

[5] A "marked" limitation is defined in the following way: "The ability to function in this area is seriously limited." (Tr. 644).

In reviewing claims filed before March 27, 2017, such as the instant one, the ALJ is required to accord controlling weight to the opinion of a treating physician if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2). The ALJ must weigh the non-controlling opinion based on a series of factors, including the length, frequency, nature, and extent of the treatment relationship, the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ's explanation for such weight allocation must include reasons that are "supported by the evidence in the case record, and ... sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion[.]" *Id.* These requirements comprise what is known as the "treating physician rule."

The Court concludes that the ALJ indeed violated the treating physician rule in this case, thus necessitating remand for further consideration. For instance, the ALJ discounted Dr. Elazar's conclusions in part based on the mistaken assumption that Plaintiff "was accepted to college and received at least one job offer." (Tr. 27). The record instead suggests that one of Plaintiff's children was planning to attend college and that someone other than Plaintiff may have received a job offer in Georgia. (Tr. 579).[6] This error is not inconsequential as the ALJ thrice referenced these erroneous facts in the opinion to additionally discount Plaintiff's

---

[6] A contextual reading suggests that Plaintiff's husband, Randy, received the job offer in question. (Tr. 579).

credibility, the third party opinion of Beverly Angel, and to conclude that Plaintiff did not meet the criteria of Listings 12.04 or 12.06. (Tr. 23-25, 27).

The ALJ's reliance on Plaintiff's "extensive" sociability (Tr. 26) is similarly misplaced and significantly exaggerated. In addition to mistakenly finding that Plaintiff was admitted into college and received a job offer in June of 2014, the ALJ noted that Plaintiff "put up 48 cans of beans in July 2014." (Tr. 23). It is unclear how Plaintiff's bean-canning endeavors demonstrate a higher capacity for social interaction than has been alleged by Plaintiff or Dr. Elazar, as there is no suggestion that such activity took place in a group setting. The ALJ also cites a record indicating that Plaintiff was "going to [a university] in order to fill out paperwork" (Tr. 23), which refers to her attempt to obtain financial aid for her daughter to attend college, despite Plaintiff describing the experience as significantly stressful. (Tr. 910). The ALJ additionally listed "shopping at Walmart and T.J. Maxx" as evidence that she had no difficulty leaving her home (Tr. 23), yet such excursions were reportedly limited due to Plaintiff's anxiety. (Tr. 904, 906, 929). Indeed, the record shows that Plaintiff sometimes experienced panic attacks while shopping (514), which tends to support Dr. Elazar's finding of "marked" limitations in social capability. (Tr. 644-45).

Contrary to the ALJ's finding, there is significant evidence in the record that Plaintiff struggled with activities outside of her home. She reported anxiety-related vomiting after dining out (Tr. 521), anxiety while spending time with her family at a lake (Tr. 588), anxiety at a Chili's restaurant (Tr. 593), feelings of panic while driving (Tr. 597), and reported a panic attack while traveling to Knoxville, Tennessee. (Tr. 586). The ALJ erroneously disregarded this countervailing evidence while ascribing high value to Plaintiff's social engagements. *See Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) ("[T]he ALJ must give some

indication of the evidence upon which [she] is relying, and [she] may not ignore evidence that does not support [her] decision, especially when that evidence, if accepted, would change [her] analysis.").

The ALJ additionally discounted Dr. Elazar's opinion based on Plaintiff's demeanor during their various encounters, in which she appeared "calm and cooperative, with normal thought processes." (Tr. 27). However, this is only a partial description of Dr. Elazar's findings, which additionally included impaired cognition and circumstantial thought processes. (Tr. 624-25, 627-29).[7] Dr. Elazar noted Plaintiff's reported panic attacks (Tr. 534, 621, 627) and found that she "did not progress" during the course of treatment with respect to anxiety and depression. (Tr. 618, 621, 623, 625). He prescribed numerous medications to combat her symptoms, including Seroquel, Xanax, Zoloft, and Wellbutrin (Tr. 628), and repeatedly assigned Plaintiff a global assessment of functioning ("GAF") score of 50 (Tr. 618, 621, 623, 625), which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Revision 2000) ("DSM-IV-TR").

The Court also notes that Plaintiff was "extremely anxious" and "incredibly on edge" during multiple other examinations (Tr. 493-94, 850), with one treating physician describing her as having "an incredibly high level of anxiety. She literally makes me nervous talking with her and about her." (Tr. 851). She was additionally noted as being "extremely anxious" and "incredibly on edge" on examination (Tr. 493, 850), and described as the "most anxious patient

---

[7] Circumstantiality is defined as "a disturbed pattern of speech or writing characterized by delay in getting to the point because of the interpolation of unnecessary details and irrelevant parenthetical remarks; seen in persons with schizophrenia and obsessive-compulsive disorders." *See* Elsevier Saunders *Dorland's Illustrated Medical Dictionary* 364 (32nd ed. 2012).

in my practice." (Tr. 494). While the ALJ is not required to discuss each piece of evidence in the record, she also "may not ignore ... evidence that is contrary to the ruling." *Craig v. Colvin*, No. 3:12-cv-0333, 2014 WL 1287178, at *12 (M.D. Tenn. Mar. 28, 2014) (quoting *McCombs v. Barnhart*, 106 F. App'x 480, 484 (7th Cir. 2004)).

Moreover, the ALJ was inconsistent in her allocation of weight to opinions bearing the exact same findings. Plaintiff correctly notes that the functional limitations included in Dr. Elazar's opinion are identical to those contained in the MSS completed by Susan Prince, a licensed professional counselor. (Tr. 645-66, 648-49). Yet the ALJ opted to accord "partial weight" to Ms. Prince's opinion regarding Plaintiff's mental functioning (Tr. 28), a finding that stands at odds with the ALJ's decision to give "little weight" to the same functional limitations proffered by Dr. Elazar. (Tr. 27). It makes little sense that Dr. Elazar's opinion can be dismissed as "inconsistent with the overall medical evidence" (Tr. 27) while Ms. Prince's analogous opinion is given at least some amount of deference. More vexing still, the ALJ accorded "some weight" to a "Doctor's Checklist for Functional Impairment" completed by Ms. Prince eight months earlier despite Ms. Prince's failure to identify any specific functional limitations in the document. (Tr. 27, 539-40). Such inconsistency makes it impossible for the Court to "trace the path of the ALJ's reasoning," *Cogar v. Astrue*, No. 5:11-CV-1585, 2012 WL 2130974, at *6 (N.D. Ohio May 25, 2012), *report and recommendation adopted*, 2012 WL 2131447 (N.D. Ohio June 12, 2012).

This error is compounded by the ALJ's failure to provide legitimate support for her decision to discount Ms. Prince's MSS. The ALJ points to Ms. Prince's opinion that Plaintiff would be off task for 50% of a normal workday as being "inconsistent with her having worked part-time over a sustained period." (Tr. 28). However, given that an average workday consists of

eight hours, *see, e.g., Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 722 (6th Cir. 2013), and that Plaintiff works a "maximum" of three to four hours per day in her part-time job (Tr. 302), it is unclear how Ms. Prince's assessment is necessarily inconsistent. Plaintiff identifies a mountain of evidence indicating that she experiences chronic fatigue (DE 15-1 at 21), which both Ms. Prince *and* Dr. Elazar identified as a work-preclusive condition. (Tr. 644, 647). The record further indicates that Plaintiff, despite working just three to four hours per day for three days of the week, still experiences "a lot of anxiety" in the job and frequently reports work-related stress. (Tr. 933, 938-39, 946, 959, 961). While the ALJ is certainly permitted to consider part-time work in assessing the extent of a claimant's daily activities, *Ashworth v. Sullivan*, No. 91-5699, 1991 WL 278961, at *3 (6th Cir. Dec. 30, 1991), a claimant should not be penalized for working a modest amount at a part-time job despite significant mental hardship. *See Cline v. Sullivan*, 939 F.2d 560, 565-66 (8th Cir. 1991) ("The presumption that a claimant is not disabled merely because the claimant had a lenient employer, a high tolerance for pain, or no other means of support would unfairly shift the burden of proof back onto the claimant at a point in the proceedings when the burden rightfully belongs to the [Commissioner]."). Defendant's equivocal statement that "[i]t does not seem plausible that Plaintiff's time spent off task would precisely line up with the hours she was not working" (DE 16 at 11) fails to advance the ALJ's position.

The ALJ additionally discounted Ms. Prince's opinion that Plaintiff had marked limitations in her ability to "interact with others" (Tr. 28), yet such a broad finding is not found anywhere in the MSS. Ms. Prince instead concluded, as did Dr. Elazar, that Plaintiff's social ability was markedly limited in three ways: her ability "to interact appropriately with the general public," "accept instructions and respond appropriately to criticism from supervisors," and "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (Tr.

648). Such imprecision is especially problematic in light of the ALJ's failure to recognize that Ms. Prince's findings are the same as those offered by Dr. Elazar, a treating physician. *See Reagan v. Colvin*, 47 F. Supp. 3d 648, 653 (E.D. Tenn. 2014) (noting that the ALJ "must articulate with specificity reasons for the findings and conclusions that he or she makes to facilitate meaningful judicial review") (quoting *Bailey v. Comm'r of Soc. Sec.,* No. 90–3061, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999)).

Finally, the Court highlights the inconsistency of the ALJ's analysis with respect to the opinions provided by non-examining State agency consultants. The ALJ accorded "great weight" to these opinions based on their purported consistency with the overall medical record (Tr. 24, 28), yet proceeded to deviate from the recommendations included therein. For example, in considering whether Plaintiff met the criteria included in Listings 12.04 and 12.06, the ALJ opined that Plaintiff suffered only mild restrictions with respect to activities of daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration, persistence, and pace ("CPP"), and had experienced no episodes of decompensation. (Tr. 24).[8] The State consultants actually concluded, however, that Plaintiff suffered from *moderate* limitations with respect to activities of daily living and experienced "one or two" repeated episodes of decompensation. (Tr. 78, 97). The ALJ therefore adopted only half of the functional limitations proffered by the State agency consultants in assessing the relevant listing criteria, despite the absence of any medical opinion finding that Plaintiff had just "mild" limitations in her activities of daily living and zero episodes of decompensation. *Cf. Chatterton v. Comm'r of Soc. Sec.*, No. 1:12-CV-284, 2013 WL 2353976, at *9 (S.D. Ohio May 29, 2013), *report and*

---

[8] Listed impairments describe certain conditions that the Commissioner "considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (internal citation omitted).

*recommendation adopted*, 2013 WL 3224036 (S.D. Ohio June 25, 2013) (by unilaterally concluding that a claimant had mild social limitations despite the presence of three consistent medical opinions findings that such limitations were moderate, the ALJ "impermissibly created her own lay medical opinion with regard to plaintiff's mental impairments in contravention of the applicable regulations and the weight of the evidence"). While adoption of such findings would not necessarily have changed the outcome of the listing analysis, such disparity underscores the ALJ's failure to adequately consider the opinion evidence of record. *See Gayheart*, 710 F.3d at 379 ("A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires.").

It is well-established that an ALJ must rely on "substantial, legitimate evidence to support [her] factual conclusions." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). Moreover, the ALJ "is required to evaluate every medical opinion of record, and set forth a valid basis for rejecting any." *Vrabel v. Comm'r of Soc. Sec.*, No. 14-12673, 2015 WL 5244358, at *7 (E.D. Mich. Sept. 8, 2015) (citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)). In the instant case, there are simply too many errors in the ALJ's analysis to conclude that substantial evidence supports the administrative opinion, including the ALJ's failure to explain her decision to give disparate weight to the opinions of Dr. Elazar and Ms. Prince, and her related failure to justify elevating the opinions of the nonexamining State consultants' opinions over others included in the record. The Court therefore concludes that this matter should be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[9]

---

[9] Sentence four of 42 U.S.C. § 405(g) states the following: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

### III. CONCLUSION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 15) be GRANTED and the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this Report and Recommendation or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. Rule 72(b).

Signed By:
*J. Gregory Wehrman*
**United States Magistrate Judge**